# EXHIBIT A

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF GRAHAM | FILE NO. |

ILA RAE WALDROUP and )
VARNELL RUFUS WALDROUP, )
                                     )
    Plaintiffs,              )
                                     )
vs.                                          )              **COMPLAINT**
                                     )
MED-TRANS CORPORATION and )
ALEX K. FULFORD, )
                                    )
    Defendants.        )
                                     )

NOW COME the Plaintiffs, through the undersigned counsel, complaining of the Defendants, and allege and say:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Ila Rae Waldroup is, and at all times relevant to this action has been, a citizen of the Untied States and resident of the State of North Carolina, and is married to Varnell Rufus Waldroup.

2. Plaintiff Varnell Rufus Waldroup is, and at all times relevant to this action has been, a citizen of the United States and resident of the State of North Carolina, and is married to Ila Rae Waldroup.

3. Defendant Med-Trans Corporation ("Med-Trans") was and is a corporation for profit with its principal place of business in Denton, Texas. Med-Trans operates air ambulance helicopters, providing aircraft and flight crews (pilots) to the public for on-demand charter operations pursuant to 14 C.F.R. § 135.1 et seq.

4. Defendant Alex K. Fulford was the Base Manager of LifeForce 6 and an employee pilot of Med-Trans Corporation. Upon information and belief, Fulford is, and at all times relevant to this action has been, a citizen of the United States and resident of the State of South Carolina.

5. This court has subject-matter jurisdiction over Plaintiffs' claims asserted in this action and venue is proper in Graham County, North Carolina, pursuant to N.C.G.S. § 1-82, as the Plaintiffs both reside in Graham County.

**FACTS COMMON TO ALL CLAIMS**

6. Plaintiffs re-allege and incorporate by reference the preceding paragraphs, for all purposes, as if fully restated herein.

7. On March 9, 2023, Plaintiff Ila Waldroup was a patient aboard a Eurocopter model EC 135 p2+ helicopter, federally registered as N558MT. That helicopter was operated by Med-Trans and Alex Fulford was pilot in command. The helicopter struck trees and crashed in Macon County, North Carolina. At all times throughout the accident sequence, the helicopter was under the sole operational control of Mr. Fulford, who was then acting in his capacity as a base manager, agent, servant, pilot-in-command and employee of Med-Trans Corporation.

8. Plaintiff Ila Waldroup suffered serious, permanent, disabling, and debilitating injuries as a direct and proximate result of Mr. Fulford's operation of the accident helicopter, with conscious and intentional disregard of and indifference to the rights and safety of others, which both he and Med-Trans knew or should have known was reasonably likely to result in serious injury, damage, or other harm. Due to Mr. Fulford's misconduct, the helicopter struck a tree causing it to depart controlled flight and impact the ground.

9. Upon information and belief, senior management employees at Med-Trans, including a safety manager and the Director of Operations, had prior knowledge that on multiple

2

occasions preceding the accident that Mr. Fulford had knowingly and intentionally operated helicopters at dangerously low altitudes, below published meteorological minimums, and below dangerously low cloud ceilings, which violated Med-Trans' Federal Aviation Administration operational limitations. Upon information and belief, certain pilots employed by Med-Trans considered Mr. Fulford to have a reputation in that company for his willingness to engage in dangerous, careless, and reckless flight operations for Med-Trans. Despite knowledge of specific instances of dangerous, careless, and reckless flight by Mr. Fulford, it is believed that senior management at Med-Trans undertook no remedial or corrective action before the crash here at issue. Further, it is believed that senior management at Med-Trans failed to self-report the dangerous and illegal actions of Mr. Fulford, which were committed in furtherance of Med-Trans aviation operations and in furtherance of financial profit to Med-Trans.

10. The subject helicopter was piloted by Mr. Fulford with a conscious and intentional disregard of and indifference to the rights and safety of others. On the accident flight, it is believed that Mr. Fulford either knowingly dispatched with an inoperable Helicopter Terrain Awareness and Warning System (HTAWS) or that he intentionally disabled the HTAWS before or while in flight. An operational HTAWS is mandatory for dispatch in medical flights, pursuant to 14 C.F.R. § 135.605. No one on behalf of Med-Trans informed Federal Aviation Administration safety officers or other persons responsible for regulatory oversight of the illegal and dangerous nature of the subject flight. Operating without that federally-mandated safety equipment or disabling the HTAWS is unlawful, dangerous, reckless, and careless, particularly while operating at night over mountainous terrain. Mr. Fulford conducted the accident flight in a manner that made controlled flight into terrain (CFIT) a near certainty.

11. Mr. Fulford knowingly and intentionally operated the helicopter in violation of the minimum safe altitude (MSA) for helicopter operation at night. Before commencing the accident flight, Mr. Fulford determined that the highest obstacle enroute was 6,100 feet. Consequently, the minimum safe altitude for night operations along the intended route was 6,600 feet, pursuant to 14 C.F.R. § 135.615(b)(2). Mr. Fulford used 5,500 feet as an initial altitude, despite knowing that he was operating 1,100 feet below the minimum safe altitude, at night, in the mountains, and below the terrain's peak rims. As the cloud deck (ceiling) lowered, Mr. Fulford knowingly, intentionally, carelessly, and recklessly descended to 5,000 feet, fully 1,600 feet below the minimum safe altitude and at an altitude restricted to IFR (Instrument Flights Rules) operations.

12. Mr. Fulford had operational night vision goggles within easy reach, which he failed to use. This was with conscious and intentional disregard of and indifference to the rights and safety of others given that Mr. Fulford was flying at low altitudes above ground level, after dark, and below the peak rims in mountainous terrain.

13. Mr. Fulford was reading an aircraft logbook while piloting the helicopter at low altitude, at night, without using his available night vision goggles, while in mountainous terrain, with an inoperable or disabled HTAWS, below peak rims, and far below the enroute minimum safe altitude. This too was done with conscious and intentional disregard of and indifference to the rights and safety of others.

14. The Defendants' motive was to maximize profit without regard for the safety of the passengers in the helicopter. Upon information and belief, Mr. Fulford was known to Med-Trans executives and other company pilots for his willingness to "scud run" and for accepting flights no other pilots would take because the weather at both the destination and alternate airports were below approach to landing minimums. Under those conditions, it was unlawful to commence the

approach; and doing so required Mr. Fulford to intentionally descend below ("bust") published minimum altitudes and terrain clearances. These actions were willful and wanton and evidenced a conscious and intentional disregard of, and indifference to, the rights and safety of others due to the reasonable likelihood of serious injury and damage.

15. On the night of the accident, there was a near certainty of serious harm to Plaintiff Ila Waldroup, who was a patient being transported from Erlanger Western Carolina Hospital in Murphy, North Carolina, to Mission Hospital in Asheville, North Carolina. Operating a helicopter at night and in mountainous terrain is dangerous under the best of circumstances and demands a high level of piloting skill. Mr. Fulford knowingly and intentionally piloted the helicopter below the minimum safe altitude and in dangerous proximity to the ground, commonly known as "scud running." Instead of watching outside the aircraft, Mr. Fulford turned on the autopilot and consciously diverted his attention from his piloting duties to reading a logbook. Upon information and belief, the Helicopter Terrain Avoidance and Warning System (HTAWS), a device expressly designed, manufactured, and intended to alert pilots to rising or approaching terrain in order to avoid flight into terrain, was either inoperable or disabled in violation of federal regulations.

16. Upon information and belief, Med-Trans executives knew that Mr. Fulford operated its medical helicopters in violation of its company Operations Manual and in direct violation of federal air regulations as defined in 14 C.F.R. Part 135 and 14 C.F.R. Part 91. Upon information and belief, the Med-Trans Director of Operations and its safety officer knew that Mr. Fulford had a deserved reputation in the company for operating helicopters on "multiple occasions" with a dangerous disregard for the safety of people onboard the aircraft, including medics, nurses, and patients.

5

17. Defendant Med-Trans actively concealed the facts and consequences of its pilot's conduct. At no time during the federal investigation into the cause of this crash did the Defendants disclose to the FAA or to the NTSB that Mr. Fulford either departed with an inoperable HTAWS or disabled the HTAWS while in flight. Had this information been properly and timely disclosed, it is believed that the FAA would have instituted enforcement proceedings to suspend or revoke Mr. Fulford's pilot certificate and to suspend or revoke the FAA's 14 C.F.R. Part 135 Operating Certificate issued to Med-Trans. Instead of disclosing the facts and consequences of their conduct, Defendants violated the law by falsifying, concealing, or covering up material facts about the inoperable or disabled HTAWS, and withholding that information from the federal agents investigating the crash and from the FAA's Principal Operations Inspector for Med-Trans.

18. Prior to this crash, it is believed that Mr. Fulford was determined to have on multiple occasions knowingly and intentionally operated helicopters for Med-Trans at altitudes below the minimum safe altitude and in weather conditions below approach minimums at both the destination and alternate airports. Upon information and belief, Med-Trans knew of these revenue flights, tacitly condoned these revenue flights, took no remedial action against Mr. Fulford, and maintained no documents concerning any relevant investigation of these issues. Upon information and belief, Med-Trans negligently retained Mr. Fulford as a pilot because he would undertake revenue flights that other Med-Trans pilots rejected because they were dangerous and unsafe.

19. As a result of the ground impact during the crash sequence, Plaintiff Ila Waldroup suffered severe and life-altering injuries, including, but not limited to, lumbar spinal fractures, bilateral sacral fractures, left superior pubic ramus fracture, and bi-malleolar ankle fracture. These and other injuries have caused and will continue to cause physical pain and mental suffering, and will require future rehabilitative intervention.

20. As a direct and proximate result of Defendants' acts and omissions described herein, Plaintiff Ila Waldroup also incurred economic damages in the form of past and future medical bills.

21. Additionally, Plaintiff Varnell Waldroup suffered loss of consortium, including the loss of marital services, society, affection, and companionship, due to the serious, permanent, disabling, and debilitating injuries of his spouse, Plaintiff Ila Waldroup.

## FIRST CLAIM FOR RELIEF:
## NEGLIGENCE

22. Plaintiffs re-allege and incorporate by reference the preceding paragraphs, for all purposes, as if fully restated herein.

23. Defendant Med-Trans owed Plaintiff Ila Waldroup the highest standard of care as a common carrier. Defendants are specifically charged with duties to not operate an aircraft in a careless or reckless manner pursuant to 14 C.F.R. § 91.13 and common law standards of care. Defendants failed to meet all standards of care applicable to on-demand, for-profit commercial medical transport flight operations.

24. Med-Trans owed Plaintiff Ila Waldroup duties, including, but not limited to, proper training, evaluation, and scheduling of its pilot; ensuring adherence to aircraft flight manuals and approved operation procedures; to provide appropriate warnings required by approved operating procedures; evaluating recorded flight data to assess trends in pilot proficiency; to provide remedial pilot training when necessary. Med-Trans failed to provide a helicopter that was properly equipped with an operated by a pilot who was familiar with and abided by the requirements of law.

25. Notwithstanding its duties, Defendant Med-Trans Corporation breached them in the following particulars when it and/or its agent, servant, and employee acting as the pilot-in-command:

7

a. Negligently failed to operate the subject helicopter at an appropriate and safe altitude;

b. Negligently failed to operate the subject aircraft in a careful and non-reckless manner;

c. Negligently failed to operate the aircraft in a manner that assured a safe and proper flight, including, but not limited to, maintaining situational awareness of proximity to the rising terrain and proper use and operation of an aircraft Terrain Awareness and Warning System (TAWS);

d. Negligently failed to use night vision goggles, when they were readily available, while operating at night in mountainous terrain;

e. Negligently failed to warn Plaintiff of the impending danger;

f. Negligently failed to properly train and supervise the pilot-in-command in a manner reasonably calculated to avoid loss of situational awareness causing impact with terrain;

g. Negligently failed to properly plan and execute the accident flight in a manner reasonably calculated to avoid dangerous conditions including improper altitude and ground clearance; and

h. Negligently failed to properly train, provide recurrent training, and otherwise instruct and schedule the pilot in a manner reasonably calculated to provide safe air ambulance transportation.

26. As a direct and proximate result of the negligent breaches of its duties, Plaintiff Ila Waldroup suffered serious personal injuries.

27. Mr. Fulford owed Plaintiff Ila Waldroup certain duties, including, but not limited to, proper risk assessment, navigation, and operation of the subject aircraft ensuring adherence to law, aircraft flight manuals, and approved operating procedures.

28. Notwithstanding his duties, Defendant Alex K. Fulford breached them in the following particulars:

   a. Negligently failing to operate the subject helicopter at an appropriate and safe altitude;

   b. Negligently failing to operate the subject aircraft in a careful and non-reckless manner;

   c. Negligently failing to operate the aircraft in a manner that assured a safe and proper flight, including, but not limited to, maintaining situational awareness of proximity to the rising terrain and proper use and operation of an aircraft Terrain Awareness and Warning System (TAWS);

   d. Negligently failing to use night vision goggles, when they were readily available, while operating at night in mountainous terrain;

   e. Negligently failing to warn Plaintiff Ila Waldroup of the impending danger;

   f. Negligently failing to maintain situational awareness causing impact with terrain; and

   g. Negligently failing to properly plan and execute the accident flight in a manner reasonably calculated to avoid dangerous conditions, including improper altitude and ground clearance.

29. As a direct and proximate result of the negligent breaches of Mr. Fulford's duties, Plaintiff Ila Waldroup suffered serious personal injuries.

## SECOND CLAIM FOR RELIEF:
## GROSS NELIGENCE AND WILLFUL AND WANTON CONDUCT

30. Plaintiffs re-allege and incorporate by reference the preceding paragraphs, for all purposes, as if fully restated herein.

31. Defendant Med-Trans owed Plaintiff Ila Waldroup the highest standard of care as a common carrier. Defendants are specifically charged with duties to not operate an aircraft in a careless or reckless manner pursuant to 14 C.F.R. § 91.13 and common law standards of care. Defendants failed to meet all standards of care applicable to on-demand, for-profit commercial medical transport flight operations.

32. Defendant Med-Trans owed Plaintiff Ila Waldroup duties, including, but not limited to, proper training, evaluation, and scheduling of its pilot; ensuring adherence to aircraft flight manuals and approved operation procedures; to provide appropriate warnings required by approved operating procedures; evaluating recorded flight data to assess trends in pilot proficiency; to provide remedial pilot training when necessary. Med-Trans failed to provide a helicopter that was properly equipped with and operated by a pilot who was familiar with and abided by the requirements of law.

33. Defendant Med-Trans Corporation acted with conscious and intentional disregard of and indifference to the rights and safety of others, which it knew or should have known was reasonably likely to result in injury, damage, or other harm, and breached its duties to Plaintiff Ila Waldroup in the following particulars when it and/or its agent, servant, and employee acting as the pilot-in-command:

    a. Grossly negligently, recklessly, and willfully and wantonly failed to operate the subject helicopter at an appropriate and safe altitude;

b. Grossly negligently, recklessly, and willfully and wantonly failed to operate the subject aircraft in a careful and non-reckless manner;

c. Grossly negligently, recklessly, and willfully and wantonly failed to operate the aircraft in a manner that assured a safe and proper flight, including, but not limited to, maintaining situational awareness of proximity to the rising terrain and proper use and operation of an aircraft Terrain Awareness and Warning System (TAWS);

d. Grossly negligently, recklessly, and willfully and wantonly failed to use night vision goggles, when they were readily available, while operating at night in mountainous terrain;

e. Grossly negligently, recklessly, and willfully and wantonly failed to warn Plaintiff of the impending danger;

f. Grossly negligently, recklessly, and willfully and wantonly failed to properly train and supervise the pilot-in-command in a manner reasonably calculated to avoid loss of situational awareness causing impact with terrain;

g. Grossly negligently, recklessly, and willfully and wantonly failed to properly plan and execute the accident flight in a manner reasonably calculated to avoid dangerous conditions including improper altitude and ground clearance; and

h. Grossly negligently, recklessly, and willfully and wantonly failed to properly train, provide recurrent training, and otherwise instruct and

11

schedule the pilot in a manner reasonably calculated to provide safe air ambulance transportation.

34. As a direct and proximate result of the grossly negligent breaches of Defendant Med-Trans' and/or its agent's duties and as a result of Defendant Med-Trans' and/or its agent's willful and wanton conduct, Plaintiff Ila Waldroup suffered serious personal injuries.

35. Mr. Fulford owed Plaintiff Ila Waldroup certain duties, including, but not limited to, proper risk assessment, navigation, and operation of the subject aircraft ensuring adherence to law, aircraft flight manuals, and approved operating procedures.

36. Defendant Alex K. Fulford acted with conscious and intentional disregard of and indifference to the rights and safety of others, which he knew or should have known was reasonably likely to result in injury, damage, or other harm, and breached his duties to Plaintiff Ila Waldroup in the following particulars:

    a. Grossly negligently, recklessly, and willfully and wantonly failing to operate the subject helicopter at an appropriate and safe altitude;

    b. Grossly negligently, recklessly, and willfully and wantonly failing to operate the subject aircraft in a careful and non-reckless manner;

    c. Grossly negligently, recklessly, and willfully and wantonly failing to operate the aircraft in a manner that assured a safe and proper flight, including, but not limited to, maintaining situational awareness of proximity to the rising terrain and proper use and operation of an aircraft Terrain Awareness and Warning System (TAWS);

d. Grossly negligently, recklessly, and willfully and wantonly failing to use night vision goggles, when they were readily available, while operating at night in mountainous terrain;

e. Grossly negligently, recklessly, and willfully and wantonly failing to warn Plaintiff Ila Waldroup of the impending danger;

f. Grossly negligently, recklessly, and willfully and wantonly failing to maintain situational awareness causing impact with terrain; and

g. Grossly negligently, recklessly, and willfully and wantonly failing to properly plan and execute the accident flight in a manner reasonably calculated to avoid dangerous conditions, including improper altitude and ground clearance.

37. As a direct and proximate result of the grossly negligent breaches of Mr. Fulford's duties and as a result of Mr. Fulford's willful and wanton conduct, Plaintiff Ila Waldroup suffered serious personal injuries.

## DAMAGES

38. Plaintiffs seek recovery of all damages available to them under applicable North Carolina law.

39. As a direct and proximate result of the Defendants' negligence and gross negligence, Plaintiff Ila Waldroup suffered life-altering injuries and damages, which are serious and permanent. She suffered mental anguish, emotional distress, and has incurred and will incur medical bills and expenses.

40. Plaintiff Varnell Waldroup suffered loss of consortium, including the loss of marital services, society, affection, and companionship, arising from the injuries suffered by his spouse.

41. Plaintiffs further request recovery of pre-judgment interest and post-judgment interest at the legal rate.

## **PUNITIVE DAMAGES**

42. The conduct of the Defendants, when viewed objectively from the standpoint of these Defendants at the time of the occurrence of the helicopter crash, was willful and wanton and involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risks involved with the operation of this flight, but nevertheless proceeded with conscious indifference to the rights and safety of others, including Plaintiff Ila Waldroup. Consequently, Defendants' conduct is grounds for punitive damages under Chapter 1D of the North Carolina General Statutes. In determining the amount of punitive damages, the trial of fact should consider the following:

a. The reprehensibility of the defendant's motives and conduct;

b. The likelihood, at the relevant time, of serious harm;

c. The degree of the Defendants' awareness of the probable consequences of its conduct;

d. The damages suffered by the Plaintiffs;

e. The concealment by the Defendants of the facts or consequences of their conduct;

f. The existence and frequency of similar past conduct by the Defendants;

g. whether the Defendants profited from the conduct;

h. The Defendants' ability to pay punitive damages, as evidenced by their revenues or net worth; and

i. The purpose of punitive damages, which is to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts.

## JURY DEMAND

43. Plaintiffs respectfully demand a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, the Plaintiffs pray that they have and recover judgment against the Defendants for the following:

1. Actual damages of Plaintiff Ila Waldroup directly and proximately caused by Defendants' negligence and gross negligence in an amount exceeding $25,000.00, including:

    a. Expenses paid or owed for her medical care, treatment, hospitalizations, rehabilitation, and her necessary future medical care and related services and expenses;

    b. Compensation for her physical pain and mental suffering; and

    c. Compensation her permanent injury and loss of use of part of her body;

2. Actual damages of Plaintiff Varnell Waldroup directly and proximately caused by Defendants' negligence and gross negligence in an amount exceeding $25,000.00, for the loss of marital services, society, affection, and companionship of his spouse;

3. All such other sums as shall be determined to compensate the Plaintiffs fully and fairly for all general, special, incidental, and consequential damages incurred, or to be incurred, by the Plaintiffs as a direct and proximate result of the acts and omissions of the Defendants;

4. Punitive damages in an amount exceeding $25,000.00 due to Defendants' willful and wanton conduct;

5. For payment of Plaintiffs' costs of suit herein incurred;

6. For both pre-judgment and post-judgment interest on any amounts awarded;

7. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8. For such other and further relief as the Court may deem just and proper.

This the 3rd day of October, 2025.

/s/ George B. Hyler, Jr.
George B. Hyler, Jr.
N.C. Bar No. 5682
Stephen P. Agan
N.C. Bar No. 35763
Co-Counsel for Plaintiffs
Hyler & Agan, PLLC
38 Orange Street
Asheville, NC 28801
Telephone: (828) 254-1070
Fax: (828) 254-1071
george@hylerandagan.com
steve@hylerandagan.com
